## G & R REALTY CO v IMBORDINO

Ohio Appeals, 8th Dist, Cuyahoga Co

Decided Sept 22, 1924

Howard D. Burnett, Cleveland, and Garber & Garber, Cleveland, for plaintiff in error.

L. R. Lanza, Cleveland, for defendant in error.

VICKERY, PJ.

Several errors are complained of why the verdict should not be permitted to stand.

An examination of the record discloses that this corporation had employed a man by the name of Bailey, as an agent for the selling of real estate, and the plaintiff claims to have been employed by Bailey, under the express contract above referred to, whereby he was to receive eight per cent of the sales made by him. The only claim that is made of his right to compensation grows out of the hiring by Bailey of the said plaintiff below, and the agreement between Bailey and the plaintiff.

In the transaction in question, there is no evidence in the record to bear out the plaintiff's contention that he was employed or hired by the company itself, or that the company ever authorized Bailey to employ a sub-agent. It is a well settled doctrine in this state, as well as elsewhere, that an agent cannot delegate his authority, and unless he was expressly authorized to employ the plaintiff below, even though Bailey did employ plaintiff below, the company would not be responsible. He might have a right of action against Bailey, but not against the company.

We have scanned this record and fail to find any evidence where the company had authorized Bailey to hire the plaintiff to sell real estate for it. It is true, the plaintiff seeks as a part of his case and did introduce certain vouchers which the company had paid plaintiff in other transactions. Just how this was competent or relevant at the time, we are at a loss to understand, because the fact that he may have been paid certain commissions by the com-

pany for sales prior to that time, would not tend to prove that the contract sued upon in this case had ever been entered into. We can conceive how such evidence might be admissible and pertinent in rebuttal, if certain denials had been made, and the foundation laid by the defendants in the trial below. We do not know whether there was an objection to this testimony or not. If there were, it should have been sustained, but that was not urged before us in oral argument at least, as an assignment of error.

We think the record is not only silent as to Bailey's authorization to hire plaintiff below, but it is also silent as to the plaintiff being hired by Bailey in this transaction. It seems, from the record, that at one time Bailey was sales manager, and the company sold lots on a certain basis, and the contract that Bailey had with the sub-agents was that the sub-agents should get their commission out of the various installments as they were paid in, and it may be possible that the company paid plaintiff below commissions on lots that were sold by him on this basis, but the record shows that there was a change of attitude and instead of selling the lots and getting a commission in that way, a building plan was adopted whereby certain lots were sold to builders without any money being paid, and the company would take a mortgage for the full purchase price of the lot and then finance the building and out of the completed transaction they and the builder would both get their money.

The record shows some time after, two months before the transaction in question was entered into between one Muni and the Real Estate Company whereby Muni took over fifteen lots and undertook to build houses on the lots, whatever rights or powers plaintiff below had in the premises, were terminated. It appears that in a long list of names which had been suggested to Bailey as possible prospective buyers, Muni's name had been suggested by plaintiff. This was when the plaintiff was working for Bailey, and it may have been when Bailey was the general sales manager of the company. Long after this relationship, if there were any between the company and the plaintiff, had terminated, Muni, who was well acquainted with Bailey on his own volition came in touch with Bailey, which resulted in an agreement whereby these fifteen lots were taken over by Muni and the company undertook to finance the building upon them. This was without any communication or connection between either Muni or the plaintiff below, or the company and the plaintiff below, and the record

would have shown, had the defendant been permitted to properly cross examine Muni who was a witness for the plaintiff, that his whole plan failed and there was, as a matter of fact, no sale at all. Muni apparently embezzled money, or appropriated the money that was raised on his lots by the company to finance the building of the property, for other purposes, and the buildings upon the lots were partly finished and left unfinished when Muni went into bankruptcy in order to escape financial responsibility as a result of this failure, and the company not only did not receive a dollar for the lots, but had become responsible for the mortgages upon the lots, and the loss of the money which Muni had appropriated to his own use.

Now when Muni was a witness on the stand, they sought, by cross-examination, to show his bias and prejudice against the plaintiff in error, by showing this transaction and the court, on the objection of the defendant in error's counsel sustained the objection and refused to permit this line of cross-examination. On what theory the court did this we are quite at a loss to understand. It was clearly competent and it was clearly erroneous to prevent this cross-examination, and if there were no other errors in this record but that, it was of such importance that the case must be reversed for that reason. Counsel for plaintiff in error gave his reasons, stating in the record what he expected to prove, but that is immaterial, because as we understand the rule it is that on cross-examination you do not have to state what you expect to prove. If the questions and the line of cross-examination were proper and were refused, it would be erroneous, and we think it was clearly erroneous for the court to refuse the cross-examnation of Muni. The record or statement of counsel now shows that Muni, having been declared a bankrupt, was seeking to have his discharge in bankruptcy, and it was opposed by the plaintiff in error and it is holding him up from getting his discharge in bankruptcy. All of this goes to show the attitude that Muni would be likely to take against the plaintiff in error. It is true, at the time this cross-examination was objected to and sustained, the discharge from bankruptcy had not been brought up, but the attitude of Muni was such that it would have thrown much light on his bias toward this contract, had he been subjected to cross-examination.

It is also claimed that the verdict is contrary to the weight of the evidence. We do not think there is a particle of evidence in this record to show any contract relation between the Realty Company and the plain-

tiff below. There is not a particle of evidence to show that Bailey, the agent of the company, was ever authorized to employ plaintiff below in this deal or any other deal similar to it, or any other sub-agent, and if he did so, he might be liable, but not the company, because as already stated, an agent cannot delegate his authority, and the appointment by him of a sub-agent would be absolutely futile.

Now it must be remembered that it is not claimed that the plaintiff below made this sale. The court tried the case on the theory that he was the procuring cause of the sale. Of course he could not be the procuring cause of the sale so as to create a liability on the part of the real estate company for commissions, unless there was a contract relation between them. As already stated, there is no evidence in the record to show that such a relation existed. He simply claims his commission of $2,020 and interest, because once when he was a sub-agent of Bailey, or if you please when Bailey was the sales manager of the plaintiff in error, Muni's name amongst others was suggested as a prospective purchaser of lots in the allotment. Now for this list of names given to Bailey, plaintiff below sought to recover, and did recover with interest $2,200 and some odd dollars, representing eight per cent commission, although the record shows that not a dollar was obtained by the plaintiff in error on this property, that instead of that they are mulcted into expenses and losses, by reason of the defalcation or appropriation of the money needed to finance these buildings by the man whom the plaintiff claims he procured to buy this property.

Another interesting fact is that the jury brought in a special verdict or special findings of fact, of which there were eight, and the answers to most of them, if not all, are based upon the desire of the jury to find for the plaintiff below, without regard to the fact that there is no evidence to sustain the answers to these questions. Some of the answers are inconsistent and would show, the fourth one particularly, that under the record as it appears in this case, Imbordino would not be entitled to recover. The fourth interrogatory is as follows: "Did Imbordino contract to call for the payment of his commission proportionately as cash was received by the company?" The answer was "Yes."

There is not a particle of evidence in this record to show that the company ever received a dollar from the purchaser. The method that was adopted was simply a means whereby they could work out a proposition to the mutual advantage of each, so the answer to the fourth interrogatory, conclusively proves that Imbordino was not entitled to a judgment, even though he had been properly employed by the plaintiff in error as its agent, which, of course is not true, as is shown by the record, but just the contrary of that.

Now I say this fourth proposition is inconsistent with the seventh question, which is as follows: "If you find that Imbordino is entitled to any money, when is it due him, when he brought in Muni's name or when Muni would have made the cash payments?" The answer is as follows: "Within a reasonable time after the deal was consummated."

Where they got the evidence to base their answer upon, we are at a loss to understand, inasmuch as the fourth proposition shows that he was not to get his commission until it had been paid into the plaintiff in error's hands.

Taking the whole record throughout, it seems that the court got as the theory of this lawsuit that the plaintiff was entitled to recover, and that theory was communicated apparently to the jury, who seemed constrained to find for the plaintiff below. Now it must be remembered that there is not a particle of evidence in this record to show that Imbordino ever spent a moment's time upon this transaction, but all that can be claimed for him is that at one time prior to the termination of his relation, such as it was, with the company, he had suggested a list of names of persons who might become prospective purchasers and among the names was Muni's name, and for that transaction the record shows that the company never received a dollar, but were injured immeasurably by it, and for that the jury awarded Imbordino $2,200 commission.

We think the judgment of the court upon this verdict was wrong, and we think that the court erred in his charge to the jury, which erroneous charge could only confuse the jury, and so taking the whole record, we do not think the plaintiff in error was given its proper day in court, but that the verdict and the judgment thereon were wrong, and the same must be reversed and is reversed, for the reasons above outlined. Inasmuch as there is an absolute lack of evidence in the record to show either ratification of the employment by Bailey or the employment by Bailey of the plaintiff below as agent in this transaction, there is no evidence upon which to base a verdict, and consequently the judgment of the court below will not only be reversed, but there will be a final judgment for the plaintiff in error.

SULLIVAN and LEVINE, JJ, concur.